# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1419V

```
* * * * * * * * * * * * * * * * * * * * * * * *   *
                                                  *
                                                  *
MITCHELL GODFREY,                                 *
                                                  *
                Petitioner,                       *      Special Master Katherine E. Oler
                                                  *
                                                  *
v.                                                *
                                                  *
SECRETARY OF HEALTH AND                           *      Filed: August 15, 2023
HUMAN SERVICES,                                   *
                                                  *
                Respondent.                       *
                                                  *
* * * * * * * * * * * * * * * * * * * * * * * *   *
```

*Isaiah Kalinowski*, Bosson Legal Group, Fairfax, VA, for Petitioner
*Jennifer Reynaud*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On October 3, 2017, Mitchell Godfrey ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that he developed Guillain-Barré syndrome ("GBS") as a result of the pneumococcal conjugate ("Prevnar 13") vaccine he received on August 10, 2016. Pet. at 1-3.

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on February 21, 2023, requesting a total of $108,243.84. ECF No. 76 at 3 (hereinafter "Fees Application" or "Fees App."). Respondent filed a response on March 8, 2023, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 79 ("Fees

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Response" or "Fees Resp.") at 3. If I determine that an award of interim fees and costs is appropriate, Respondent "respectfully recommends that the Special Master exercise her discretion and determine a reasonable award for attorney's fees and costs." *Id.* at 4. Petitioner filed a reply on March 9, 2023. ECF No. 80 ("Fees Reply").

I hereby **GRANT IN PART** Petitioner's application and award a total of **$103,475.26** in interim attorneys' fees and costs.

## I.    Legal Standard

### A. Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375.  *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

### B. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### C. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable

3

basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.*, 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II.   Discussion

### A.   Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). In this case, Petitioner's attorney has been working on this case since 2016. Fees App. at 1; Ex. 147 at 1. Additionally, Petitioner has retained two experts at a substantial cost. Ex. 148 at 34, 40; Ex. 149 at 5. The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008).

I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees).

4

Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

**B.  Good Faith and Reasonable Basis**

Respondent has not raised any specific objection to the good faith or reasonable basis for this claim and leaves such a determination to my discretion. *See* Fees Resp. at 2-4. I find that the petition was filed in good faith.

With regard to reasonable basis, Petitioner submitted four expert reports; two from Dr. Zurab Nadareishvili, who is board certified in neurology and vascular neurology, and two from Dr. Lawrence Steinman, who is also board certified in neurology.  Exs. 99; 101; 112; 142. Both experts opined that the Prevnar 13 vaccine Petitioner received caused him to suffer from GBS. *Id.*

Specifically, Dr. Nadareishvili theorized that the Petitioner's Prevnar 13 vaccination acted as a substantial factor in triggering an autoimmune demyelinating process. *See* Ex. 99 at 16. He opined that the demyelinating process began approximately 15 days following Petitioner's vaccination, progressing into GBS. *Id.* Similarly, Dr. Steinman theorized that the Prevnar 13 vaccination most likely caused Petitioner's GBS based on molecular mimicry between contactin-1, CRM197, and a diphtheria toxin. *See* Ex. 112 at 31.

This constitutes sufficient evidence to establish a reasonable basis for the claim. As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

**C.  Attorneys' Fees**

Petitioner retained Mr. Isaiah Kalinowski of Maglio, Christopher & Toale ("MCT") to represent him in this matter. Fees App. at 2. As of December 31, 2022, Mr. Kalinowski left MCT for Bosson Legal Group ("BLG"). *Id.* at 3.

Petitioner requests a total of $73,356.30 in attorneys' fees be disbursed to MCT and $4,997.00 in attorneys' fees be disbursed to BLG.  Ex. 147 at 25; Ex. 149 at 4. Petitioner requests that separate checks be made payable to MCT and BLG. Fees App. at 3.

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for

attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests compensation for his attorney, Isaiah Kalinowski, at the following hourly rates: $358.00 per hour for work performed in 2017; $368.00 per hour for work performed in 2018; $383.00 per hour for work performed in 2019; $405.00 per hour for work performed in 2020; and $430.00 per hour for work performed in 2021 and 2022. Fees App., Ex. 147 at 24.

Mr. Kalinowski also requests compensation for his colleagues at MCT: for Mr. Altom Maglio, $362.00 per hour for work performed in 2017; for Ms. Danielle Strait, $415.00 per hour for work performed in 2022 and $450.00 per hour for work performed in 2023; for Ms. Diana Stadelnikas, $359.00 per hour for work performed in 2016; and for Ms. LeeAnne Pedrick, $220.00 per hour for work performed in 2022.

Mr. Kalinowski also requests rates ranging from $135.00 to $170.00 per hour for paralegal work performed between 2017 and 2022 at MCT and $115.00 per hour for paralegal work performed in 2022 at BLG. Ex. 147 at 24; Ex. 149 at 4.

This request is consistent with *McCulloch* and what Mr. Kalinowski, his colleagues at MCT, and his paralegals have previously been awarded. *Est. of Armstrong v. Sec'y of Health & Hum. Servs.*, No. 18-0356V, 2023 WL 4350665, at *2 (Fed. Cl. Spec. Mstr. June 20, 2023); *Price v. Sec'y of Health & Hum. Servs.*, No. 17-586V, 2023 WL 1956352, at *2 (Fed. Cl. Spec. Mstr. Feb. 13, 2023); *Hendrickson v. Sec'y of Health & Hum. Servs.*, No. 15-812V, 2023 WL 166410, at *3 (Fed. Cl. Spec. Mstr. Jan. 11, 2023); *Godek v. Sec'y of Health & Hum. Servs.*, No. 19-106V, 2022 WL 2903360, at *3 (Fed. Cl. Spec. Mstr. June 30, 2022); *Cain v. Sec'y of Health & Hum Servs.*, No. 17-264V, 2022 WL 1299129, at *2 (Fed. Cl. Spec. Mstr. Apr. 5, 2022); *Puckett v. Sec'y of Health & Hum. Servs.*, No. 17-1316V, 2020 WL 5407838, at *2 (Fed. Cl. Spec. Mstr. Aug. 28, 2020); *Brock v. Sec'y of Health & Hum. Servs.*, No. 18-399V, 2020 WL 1815766, at *2 (Fed. Cl. Spec. Mstr. Mar. 10, 2020).

---

[3] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf

The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf

The 2022 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27-Forum-Rate-Fee-Schedule-2022-%28Final%29.pdf.

The 2023 Fee Schedule can be accessed at: https://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2023.pdf

The hourly rates contained within the schedules are updated from the decision in *McCulloch*, 2015 WL 5634323.

Ms. Strait has not yet been awarded fees for work performed in 2023. Ms. Strait was admitted to practice law in California in July 2010, meaning that she had 12 to 13 years of experience at the time of the work in this matter for which Mr. Kalinowski seeks compensation.[4] The requested rate of $450.00 per hour is within the range matching this level of experience in the 2023 Fee Schedule.

Accordingly, I find the requested rates are reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

a. *Clerical and Administrative Time*

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health &*

---

[4] STATE BAR OF CALIFORNIA, ATTORNEY PROFILE: DANIELLE STRAIT, https://apps.calbar.ca.gov/attorney/Licensee/Detail/270789 (last visited on August 14, 2023).

*Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at \*26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The hours billed by Mr. Kalinowski and his paralegals at MCT include examples of clerical and administrative tasks. Examples include (but are not limited to):

- July 5, 2017 (0.1 hours): "Follow up call to VA Medical Center and update notes to file"
- September 15, 2017 (0.3 hours): "Telephone call to Bozeman Health- Specialty Hospital and Bozeman Health Physical Therapy and Sports Medicine to follow-up on medical records request, update notes to file regarding call"

My colleagues and I have previously warned Mr. Kalinowski that attorneys' fees for clerical and administrative tasks are not reimbursable in the Program, and we have reduced his requested attorneys' fees accordingly. *Godek*, 2022 WL 2903360, at \*3-4 (reducing attorneys' fees because of attorney hours billed for clerical work such as filing and organizing medical records); *Johnson v. Sec'y of Health & Hum. Servs.*, No. 16-1449V, 2021 WL 4737466, at \*17 (Fed. Cl. Spec. Mstr. Aug. 13, 2021) (reducing Mr. Kalinowski and paralegal's attorneys' fees because of hours billed for clerical and administrative work).

Mr. Kalinowski and his colleagues at MCT billed a total of 6.2 hours of administrative and clerical tasks, totaling $1,158.70. I therefore find that a reduction to the requested attorneys' fees to MCT in that amount is warranted. I found no examples of clerical or administrative tasks in the hours billed by Mr. Kalinowski and his paralegal at BLG.

    *b. Block Billing*

It is well-established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine whether the amount requested is reasonable. *Bell v. Sec'y of Health & Hum. Servs.*, 18 Cl. Ct. 751, 760 (1989). Petitioner bears the burden of documenting the fees and costs claimed. Block-billing, or billing large amounts of time without sufficient detail as to what tasks were performed is clearly disfavored. *Broekelschen,* 2008 WL 5456319, at \*8 (reducing petitioner's requested attorneys' fees in part for block-billing); *see also Jeffries v. Sec'y of Health & Hum. Servs.,* No. 99-670V, 2006 WL 3903710, at \*9 (Fed. Cl. Spec. Mstr. Dec. 15, 2006); *Plott v. Sec'y of Health and Hum. Servs.*, No. 92-0633V, 1997 WL 842543, at \*5 fn. 5 (Fed. Cl. Spec. Mstr. Apr. 23, 1997). Indeed, the Vaccine Program's Guidelines for Practice state, "Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."[5]

---

[5] The Guidelines for Practice are available at http://www.uscfc.uscourts.gov/sites/default/files/Guidelines-4.24.2020.pdf

Several of the entries in the invoices here are block-billed. For example, an entry on April 21, 2020, billed for 4.4 hours reads as follows:

> Refer to Respondent's expert report; Search prior filings for Respondent's medical literature in support of expert report; Draft message to Respondent's Counsel regarding Respondent's failure to file supportive medical literature; Begin update message to expert; Perform research, and search for medical pneumococcus and mixed AIDP/AMAN type of GBS suffered by Petitioner; Finish update message to expert with references attached, seeking his continuation of expert opinion.

Ex. 147 at 17.

Another entry billed for 2.8 hours on September 11, 2018, reads "Review Respondent's Report and forward to client; Review Order of the Court; Prepare for call with client to discuss developments and strategy; Discuss what items are still needed to compose demand letter; research medical records and medical literature for support for causation." *Id*. at 9-10.

Overall, Mr. Kalinowski block-billed 19.7 hours of work done at MCT, amounting to $6,102.80. Accordingly, I find that a further 5% reduction of the award of attorneys' fees granted to MCT, a total of $3,609.88, is reasonable. I find no examples of block billing in the invoices for BLG and thus no reduction is warranted.

As a result, I award Petitioner a total of **$73,584.72** in attorneys' fees: **$68,587.72** to MCT and **$4,997.00** to BLG.

**D.  Reasonable Costs**

Petitioner requests a total of $21,904.14 in costs incurred at MCT, $486.64 for travel expenses; $20,325.00 for expert fees; $605.30 for medical record requests; $400.00 for the Court's filing fee; and $87.20 for shipping costs. Documentation was provided for the travel expenses, medical record requests, the Court's filing fee, and shipping costs, and these will be paid in full.

Petitioner further requests a total of $7,986.40 in costs incurred at BLG, which includes $0.10 for obtaining a PACER docket report, $11.30 for PACER files, and $7,975.00 for Dr. Steinman's expert fee. Ex. 149 at 4. Petitioner did not provide documentation for the PACER docket and files. However, as these are costs typically associated with litigations and the total is reasonable, these will be paid in full.

1.  Travel Expenses

Petitioner requests travel expenses for Mr. Kalinowski's visit to Bozeman, Montana, in the following amounts: $75.37 for his hotel stay; $153.42 for a rental car; $8.86 for fuel; $21.59 for meals; and $227.40 for his airline ticket and baggage fees. Ex. 148 at 1. Documentation for all travel expenses was provided and I find these expenses reasonable. *Id.* at 10-16. They will be paid in full.

2.   Petitioner's Expert Costs for Zurab Nadareishvili, M.D., Ph.D.

Dr. Zurab Nadareishvili submitted two expert reports in this case. Exs. 99, 101. Dr. Nadareishvili requests compensation at an hourly rate of $400.00 for seven hours of work totaling $2,800.00. Ex. 148 at 34.

Dr. Nadareishvili received his medical degree from Tbilisi State Medical Institute in the Republic of Georgia. Ex. 100 ("Nadareishvili CV") at 1. After graduating from medical school in 1984, Dr. Nadareishvili pursued a PhD in Neurology from the Tbilisi State Medical Institute. *Id.* Following his education, Dr. Nadareishvili completed his internship from 1984 to 1987 and residency from 2006 to 2008 at Georgetown University Hospital and Affiliated Institutions, becoming Chief Resident from 2007 to 2009. *Id.* at 2. He is board certified in neurology and vascular neurology. *Id.* at 1. Currently, Dr. Nadareishvili is an Associate Professor of Neurology at The George Washington University School of Medicine and Health Sciences and the head of the Stroke Program at Virginia Hospital Center in Arlington, Virginia. *Id.*

Special masters have previously awarded Dr. Nadareishvili his requested hourly rate of $400.00. *Est. of Armstrong,* 2023 WL 4350665, at *2; *Conte v. Sec'y of Health & Hum. Servs.*, No. 17-403V, 2021 WL 1120983, at *2 (Fed. Cl. Spec. Mstr. Feb. 19, 2021). A complete invoice was submitted, and Dr. Nadareishvili's hours are reasonable. Accordingly, his requested expert fees will be granted in full.

3.   Petitioner's Expert Costs for Lawrence Steinman, M.D.

Petitioner also requests expert costs for Dr. Lawrence Steinman. Dr. Steinman submitted two expert reports in this case. Exs. 112, 142. He requests an hourly rate of $550.00 for 27.5 hours of work performed during Mr. Kalinowski's time at MCT in 2021, totaling $15,125.00. Ex. 148 at 40. Dr. Steinman requests the same hourly rate for 14.5 hours of work performed during Mr. Kalinowski's time at BLG in 2022, totaling at $7,975.00. Ex. 149 at 5.

Dr. Steinman received his Bachelor of Arts in Physics from Dartmouth College in 1968. Ex. 113 ("Steinman CV") at 1. Following his B.A., Dr. Steinman received his M.D. from Harvard University in 1973 and completed his internship and residency at Stanford University in Surgery, Pediatrics, and Pediatric and Adult Neurology. *Id.* Following his medical education, Dr. Steinman completed multiple fellowships between 1975 and 1977 at the Weizmann Institute of Science in Chemical Immunology, the National Institute of Health, and as an Aharon Katzir Katchalsky Fellow. *Id.* He is board certified in neurology and is a member of a number of professional organizations including, but not limited to, the American Academy of Neurology, the Clinical Immunology Society, and the American Association of Immunologists. *Id.* at 2. Dr. Steinman has been published in a number of peer-reviewed journals. *Id.* at 5. Currently, Dr. Steinman is a Professor of Neurology at Stanford University and is actively involved in patient care. *Id.* at 1.

Although my colleagues and I have denied Dr. Steinman's request for an hourly rate of $550.00 in the past, more recent decisions have granted him this rate. *See L.R. v. Sec'y of Health & Hum. Servs.*, No. 16-922V, 2023 WL 355638 (Fed. Cl. Spec. Mstr. Feb. 14, 2023) (granting $550.00 per hour work for Dr. Steinman's work performed between 2017 and 2022); *Morrison v. Sec'y of*

*Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at \*7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (granting $550.00 per hour work for Dr. Steinman's work performed between 2021 and 2022); *Mason v. Sec'y of Health & Hum. Servs.*, No. 17-1383V, 2022 WL 4683380, at \*3 (Fed. Cl. Spec. Mstr. Sept. 8, 2022) (finding that Dr. Steinman's "demonstrated experience with the Vaccine Program has recently been deemed grounds for a slight rate increase" from $500.00 per hour to $550.00 per hour). A complete invoice was submitted, and Dr. Steinman's hours are reasonable. Accordingly, his requested expert costs will be granted in full.

I award Petitioner a total of **$29,890.54** in attorneys' costs as follows: **$21,904.14** to MCT, and **$7,986.40** to BLG.

### III.   Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application, as follows:

- A lump sum in the amount of **$90,491.86**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and Maglio, Christopher & Toale, and;

- A lump sum of **$12,983.40**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and Petitioner's counsel, Bosson Legal Group.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[6]

**IT IS SO ORDERED.**

<u>s/ Katherine E. Oler</u>
Katherine E. Oler
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.